IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| RAVENEL SEAFOOD, LLC, | ) | Civil Action Number: 2:18-cv-00130-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The United States of America ("Defendant"), by the undersigned counsel, moves the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion is further explained in the attached memorandum.

**MEMORANDUM IN SUPPORT OF MOTION**

**INTRODUCTION**

This is an action brought by Plaintiff, Ravenel Seafood, LLC, (hereafter the "Plaintiff"), a business located at 5925 Savannah Highway, Ravenel, South Carolina. (*See*, Administrative Record (ECF No. 11, p. 1.)) Plaintiff challenges the decision of the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA" or "Agency") to suspend Plaintiff's participation in the Supplemental Nutrition Assistance Program ("SNAP") for six months, which ended on or about March 18, 2018. (ECF No. 11, p. 520.) Plaintiff appealed the decision through USDA's administrative process.

## BACKGROUND

***The Supplemental Nutrition Assistance Program***

The USDA, through its agency, the FNS, administers the SNAP. 7 U.S.C. § 2011. It is the policy of Congress to "promote the general welfare" and "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2013. The benefits received by SNAP-recipient households are only for the purchase of food from approved firms. Such firms may not accept food stamp benefits as payment for ineligible items, which are generally non-food items, certain hot foods, alcoholic beverages and tobacco. 7 C.F.R. § 271.2.

Firms, both new applicants and those currently SNAP-authorized, must provide sufficient data and information about the nature and scope of their business for FNS to determine whether those firms' participation furthers the purposes of the SNAP. 7 C.F.R. § 278.1(b). All firms are initially authorized for five years; however, FNS may periodically request information from a firm for purposes of reauthorization in the program. 7 C.F.R. § 278.1(j).

***Eligibility to Participate in the SNAP***

In order to participate in the SNAP, a store must meet one of two eligibility standards: Criterion A (staple food stock) or Criterion B (staple food sales). 7 C.F.R. § 278.1(b)(1)(i)(A); 7 C.F.R. § 278.1(b)(1)(ii)-(iii); *see also* U.S. Dep't of Agric., RPMD Policy Memo No. 2018-04 (Jan. 16, 2018) available online at: https://fns-prod.azureedge.net/sites/default/files/snap/Retailer-Eligibility-Clarification-Criterion-A-and-B.pdf (last visited Aug. 30, 2018). "Staple foods are the basic food items that make up a significant portion of an individual's diet and are usually prepared at home and consumed as a major component of a meal." *Id*. More specifically, FNS has identified four categories of staple foods: 1) meat, poultry or fish, 2) bread or cereals; 3) vegetables or fruits

and 4) dairy products. 7 C.F.R. § 271.2 (definition of "staple food"). A supermarket is an example of a store that could be eligible under Criterion A because it carries all of the four categories of staple foods.

Criterion B addresses the eligibility of stores that otherwise would not be eligible under Criterion A. For example, butcher shops, bakeries and fruit and vegetables stands would not be eligible under Criterion A because they do not carry all four categories of staple foods. Still, such stores are eligible to participate in the SNAP if more than 50 percent of their total gross retail sales are attributable to sales from items in one or more of the four staple food categories. For example a butcher shop that only sells meat would be eligible because 100 percent of its total gross retail sales would be attributable to one of the four staple food categories. FNS evaluates a store's eligibility under Criterion A and B through visual inspection, review of a store's sales and purchase records and other methods. 7 C.F.R. § 278.1(b)(1)(i)(B).

***Heated and Prepared Foods***

Heated and prepared foods are not staple foods. 7 C.F.R. § 271.2; *see also* U.S. Dep't of Agric., RPMD Policy Memo No. 2017-02 (S) available online at: https://fns-prod.azureedge.net/sites/default/files/snap/2017-02-Policy-Retailer%20Eligibility-Prepared-Heated-Foods.pdf (last visited Aug. 30, 2018). "Prepared foods are hot or cold foods not intended for home preparation and/or home consumption, including prepared foods that are consumed on the premises or sold for carryout." Heated foods are foods cooked or heated by the retailer before or after purchase.

***The "Restaurant Threshold"***

Restaurants are ineligible to participate in the SNAP.[1] FNS considers a store to be a restaurant when more than 50 percent of its total gross retail sales are derived from sales of heated and/or prepared foods. For the purpose determining whether a store is considered to be a restaurant, it does not matter whether such heated and/or prepared foods are eligible for purchase with SNAP benefits. To illustrate, although SNAP benefits may be exchanged to purchase a prepared food like cold crab legs, if 50 percent or more that store's sales are attributable to the sale of cold crab legs (or other prepared foods), that store is considered to be a restaurant and ineligible to participate in the SNAP under Criterion B because prepared foods cannot be staple foods.

***Sales Tax and Prepared Food in South Carolina***

In South Carolina, "prepared food" is "food for immediate consumption (based on the type of food and the type of location selling the food) and is not eligible for the exemption under Code Section 12–36–2120(75), but is subject to the full state sales and use tax rate." S.C. Code Ann. Regs. 117.337.2 ("Prepared Meals or Food" Defined). "Prepared food" is "sold by a business, or from an identifiable location within a business, which advertises, holds itself out to the public (*e.g.*, offers hot food or the ability to heat food, provides seating, or provides utensils with the meal or food), or is perceived by the public as being engaged in the sale of ready-to-eat food or beverages to customers for their immediate consumption on or off the premises. Such a business, or identifiable location within a business, may be mobile or immobile and may or may not provide seating accommodations for its customers." *Id*. The definition of "prepared food" "includes, but is not limited to (a) meals or food sold by a restaurant, cafeteria, lunch wagon or cart, lunch counter,

[1] There are limited exceptions, inapplicable to the instant matter, where a restaurant might be eligible to participate in the SNAP. *See* 7 C.F.R. § 271.2.

cafeteria, ice cream stand, tavern, night club, or other similar places or businesses engaged in the business of selling prepared meals or food for immediate consumption, (b) meals prepared and delivered by a meal delivery service; (c) meals sold to or at congregate meal sites; (d) meals or food sold at a grocery store, convenience store or any other similar store for the purpose of eating at or near the store, such as meals or food sold with eating utensils (e.g., plates, knives, forks, spoons, cups, napkins) provided by the seller, (e) meals or food sold at hotels, motels, or other places furnishing accommodations; (f) meals or food sold at newsstands, gift shops, and snacks bars located in offices or other public or commercial buildings; (g) meals or food sold at movies theaters, opera houses, fairs, carnivals, stadiums, auditoriums, amphitheaters, or similar entertainment or sports facilities; and (h) food sold through vending machines." *Id*.

***Withdrawal of Authorization***

Failure to meet either Criterion A or Criterion B means that a firm is ineligible to participate in SNAP and the FNS must withdraw or deny authorization. 7 C.F.R. § 278.1(b)(1)(iv); 7 C.F.R. § 278.1(l)(1). A firm denied for failure to meet either Criterion A or Criterion B cannot re-apply for SNAP authorization for at least six months from the effective date of denial. 7 C.F.R. § 278.1(k)(2).

***Administrative and Judicial Review***

Title 7 of the Code of Federal Regulations at Parts 278 and 279 provides a system of administrative and judicial review. A firm may request administrative review by an Administrative Review Officer ("ARO"). 7 U.S.C. § 2023(a)(3); 7 C.F.R. § 279.1. If administrative review is sought, the administrative action is held in abeyance until the ARO makes a determination, unless the penalty is permanent disqualification for trafficking. 7 C.F.R. §

279.4(a). The ARO issues its determination, the Final Agency Decision ("FAD"), and notifies the firm. 7 U.S.C. § 2023(a)(5); 7 C.F.R. § 279.5(e).

After receiving the FAD, a store may seek *de novo* review in federal or state court to determine the validity of the administrative action. 7 U.S.C. § 2023(a)(13), (15); 7 C.F.R. § 279.7(a). "[A] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text" and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). If the action is found invalid, the court shall enter a judgment in accordance with the law and evidence. 7 U.S.C. § 2023(a)(16); 7 C.F.R. § 279.7(c). The administrative action under review remains in full force and effect during the pendency of judicial review. 7 U.S.C. § 2023(a)(17); 7 C.F.R. § 279.7(d). In cases involving issues other than permanent disqualification for trafficking, the court may stay the administrative action upon timely application by a firm. *Id.* In reviewing an application for stay, the court considers the applicant's likelihood of prevailing on the merits and any irreparable injury it might suffer without a stay. *Id.*

**STATEMENT OF THE FACTS**

Plaintiff was first authorized to participate in SNAP in 2010. ECF 11, p. 1. The instant matter concerns Plaintiff's reauthorization process in 2017. On June 5, 2017, the FNS, through its agent, ISN Corporation, conducted a site visit of the Plaintiff as a part of the reauthorization process. ECF 11, p. 63-66. The investigator did not observe any products two of the staple food categories (breads or cereals and dairy products) and limited items in the other two categories (meat, poultry, fish and vegetables and fruits). ECF 11, p. 66.

Plaintiff completed the "Supplemental Nutrition Assistance Program Reauthorization Application for Stores" (Form FNS-252-R) form dated July 30, 2017. However, Plaintiff's form

did not comport with what the investigator found. Plaintiff checked boxes indicating that it sold at least three different items in each of the four staple food staple food categories. ECF 11, p. 97. Also, Plaintiff did not complete the portion of the form asking what percentage of its total sales were attributable to staple foods. *Id*. Subsequently, however, on or about August 15, 2017, one of the Plaintiff's owners, Julius K. Brown, told the FNS that about one-third of its sales are "raw by the pound" (which are staple foods) and the rest was "cold prepared or hot" foods, which are not staple foods. ECF 11, p. 2.

On September 14, 2017, FNS issued its determination that Plaintiff's authorization to participate as an authorized retail food store in the SNAP would be withdrawn because of its failure to satisfy either Criterion A or Criterion B. ECF 11, p. 206-07. Plaintiff was notified that it would not be eligible to reapply for SNAP participation for a minimum period of six months from the effective date of its withdrawal.

Thereafter, Plaintiff availed itself of the opportunity for administrative review. It submitted additional information including alleged receipts for sales in September 2017. ECF 11, pp. 215-409; 411-503. On December 13, 2017, having considered all of the arguments put forth by Plaintiff, the ARB issued its Final Agency Decision, stating that there was sufficient evidence to support the finding that FNS properly denied authorization of the Plaintiff. ECF 11, p. 514. The six-month suspension was effective from September 14, 2017. ECF 11, P. 520. Therefore, the Plaintiff's suspension ended on or about March 14, 2018.

**<u>STANDARD OF REVIEW</u>**

The Food Stamp Act provides for *de novo* judicial review of final agency actions in United States District Court to "determine the validity of the questioned administrative action." 7 U.S.C. § 2023(a) (15). The statute accords the Agency's administrative action with "presumption of

validity." *Redmond v. United States*, 507 F.2d 1007, 1012 (5th Cir. 1975). Moreover, any judicial review must recognize that Congress's "foremost concern" in allowing FNS to establish and enforce a regulatory scheme was "to deter widespread fraud in food stamp transactions." See *Traficanti v. United States*, 227 F.3d 170, 177 (4th Cir. 2000). An aggrieved retailer bears the burden of proving, by a preponderance of the evidence, that the Agency's determination is invalid. *See Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010).

With these considerations in mind, judicial review proceeds in two stages. Initially, the plaintiff bears the burden of establishing "by a preponderance of evidence that the agency's determination is factually incorrect." *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir. 1975); *accord 2341 East Fayette Street, Inc. v. United States*, 2005 WL 2373696 at* I (D. Md. Sept. 26, 2005); *Mahmood v. United States*, (If plaintiff fails to meet the burden, the agency action must be upheld.) *Goodman*, 518 F.2d at 511.

If the Court concludes that a violation occurred, it should apply the "arbitrary and capricious" standard in determining whether the sanction imposed is valid. *Cross v. United States*, 512 F.2d 1212, 1218 (4th Cir. 1975) (*en banc*); *see also Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148 (1982). The court need only determine "whether the sanction is 'unwarranted in law or without justification in fact.'" *Id.; see also Carlson v. United States*, 879 F.2d 261, 263 (7th Cir.1989); *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir.1981); *Hernandez v. U.S. Dep't of Agric. Food and Consumer Service*, 961 F. Supp. 483 (W.D.N.Y. 1997); *Thakor v. United States*, 55 F.Supp.2d 1103, 1107 (D. Nev.1999); *Young Jin Choi v. United States*, 944 F. Supp. 323, 325 (S.D.N.Y. 1996). USDA's interpretation of and ultimate determination in accordance with the relevant SNAP statute and regulations must be

upheld even if such interpretation is not the only permissible one or even the most reasonable. *Grocery Town Market, Inc. v. United States*, 848 F.2d 392, 396 (3d Cir. 1988).

However, the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2; *see also Exxon Mobil Corp. v. Allapattah Services. Inc.*, 545 U.S. 546, 552 (2005); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *Los Angeles Cty. v. Davis*, 440 U.S. 625, 630 (1979); *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). A case is moot when a court can "no longer give . . . meaningful relief." *See City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283–86 (2001); *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 239-40 (1985). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed.R.Civ.P. 12(h)(3); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The burden is on the plaintiff to prove "by a preponderance of the evidence" that subject-matter jurisdiction exists.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003); *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979); *Bradley v. CMI Industries, Inc.*, 17 F. Supp. 2d 491, 494-95 (W.D.N.C. July 27, 1998); *Triplett v. N.C. Dep't of Public Safety*, 2017 WL 119483 at *3 (W.D.N.C. Jan. 10, 2017). "Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Bradley*, 17 F. Supp. 2d at 494. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. Verizon Servs. Corp.*, 493 F. App'x.

371, 374 (4th Cir. 2012); *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008); *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *Smith v. Va. Commw. Univ.*, 84 F.3d 672, 675 (4th Cir. 1996); *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980).

## DISCUSSION

***The Court lacks subject-matter jurisdiction because the case is moot.***

The instant matter is moot because the period of Plaintiff's disqualification from the SNAP has expired. Plaintiff's disqualification was effective on or about September 14, 2017 and expired six months later, on or about March 14, 2018. On or about February 6, 2018, Plaintiff submitted an online application for reauthorization. In April 2018, the FNS notified Plaintiff that its application was incomplete and requested additional information such as an executed signature page, copy of the owner(s) photo identification, updated sales figures, tax information and business licenses. On or about May 8, 2018, the FNS again requested the missing information. Plaintiff did not provide the requested information and the FNS withdrew the application on May 24, 2018. In June 2018, Plaintiff contacted the FNS and indicated that it would submit a new application and the associated documentation. As of the time of this filing, the FNS has not received anything.

There is no longer any controversy for the Court to settle because the facts have changed. At the time this action commenced, Plaintiff's authorization to participate in the SNAP was withdrawn and it was ineligible to submit a new application for a period of six months. That six-month period has ended. Plaintiff already submitted an application for reauthorization to

participate in the SNAP. Although that application could not be processed due to missing information, there is nothing preventing Plaintiff from submitting the application again and providing the necessary documentation. Indeed, the FNS has provided Plaintiff with the details of a particular employee Plaintiff ought to contact when it resubmits the application in order to facilitate a smooth reauthorization process. The only thing preventing Plaintiff's reauthorization to participate in the SNAP is its own inaction. The Court no longer has subject-matter jurisdiction over Plaintiff's Complaint and should dismiss the matter accordingly.

If Plaintiff is again denied authorization to participate in the SNAP, such denial will not evade the Courts' review. If Plaintiff's application is denied, the FNS will provide detailed reasons and offer an opportunity for administrative review. Plaintiff can introduce any evidence that it is not a restaurant within the meaning of SNAP regulations for the FNS to consider.

***Plaintiff is a restaurant and ineligible to participate in the SNAP.***

If, *arguendo*, the Court does not dismiss the matter outright, the United States is entitled to judgment in its favor as a matter of law. The FNS properly determined that Plaintiff is a restaurant and ineligible for participation in the SNAP. Prepared foods, whether hot or cold, are not staple foods. Sales of prepared foods cannot be used in the Restaurant Threshold analysis, *i.e.* whether at least 50 percent of the store's sales were attributable to staple foods. There is no genuine dispute that less than 50 percent of Plaintiff's sales were attributable to staple foods. Indeed, Plaintiff has already admitted as much. In August 2017, Plaintiff's representative, Mr. Brown, informed the FNS that two-thirds of Plaintiff's sales were prepared food. ECF 11, p. 7.

Moreover, the receipts Plaintiff provided during administrative review and discovery only confirm Mr. Brown's statement. During administrative review, Plaintiff provided receipts for the month of September 2017. ECF 11, pp. 215-503. Discounting some duplicate receipts, these

receipts reflect total sales of $38,799.40 for the month of September 2017. Of these sales, 68 percent or approximately $26,575 were taxed at a rate of at least 8 percent, indicating that these items were prepared foods under South Carolina law. Unprepared foods are exempt from the 6 percent sales tax in South Carolina.

In discovery, Plaintiff provided receipts for the entire 2017 calendar year. These receipts reflect total sales of $685,757.40. Of these sales, 71 percent or $484,438.01, were taxed at a rate of at least 8 percent, indicating that these items were prepared foods. Thus, Mr. Brown's statement that about two-thirds of Plaintiff's sales or 67 percent were prepared foods has been confirmed by the evidence.

Beyond sales records and the rate of sales taxation, other evidence supports the agency's determination that Plaintiff is a restaurant primarily selling prepared foods. Plaintiff describes itself as a "Seafood Restaurant" on Facebook. https://www.facebook.com/Ravenel-Seafood-103555869683002/ Plaintiff offers indoor and outdoor seating. ECF 11, pp. 75, 79. Pictures available online of Plaintiff's popular item, garlic crabs, depict crabs with red shells, indicating that they have been cooked. Garlic crab is sold in a basket with fish and oysters as well as a part of "Combination Meals" and a "Seafood Platter." It would be unsanitary to serve raw crab in a basket with cooked food, further supporting that garlic crab is indeed prepared, cooked food. ECF 11, p. 81. There are more than 100 reviews of Plaintiff on Facebook including those who expressed displeasure with being served cold garlic crabs. Crabs with red shells evidencing that they have been cooked are still prepared food, regardless of whether they are served to the customer hot or cold.

In the face of such evidence, Plaintiff cannot survive summary judgment with an attempt to raise mere metaphysical doubt as to whether Plaintiff satisfied Criterion B. Plaintiff incorrectly

tallied the September receipts by failing to discount duplicate receipts as well as ignoring that Plaintiff, by assessing a sales tax of 8 percent or more, had already identified those foods that were prepared. ECF 11, pp. 212-13. Plaintiff has alleged that it may have inadvertently collected sales tax at the rate for prepared food on items that should be considered unprepared, but not provided any proof of such a mistake such as corrected or amended tax returns or sales tax records. Plaintiff's machinations cannot supplant Mr. Brown's freely-offered admission that staple foods do not constitute at least 50 percent of Plaintiff's gross retail sales and the documentary evidence supporting such admission.

***The sanction imposed was not arbitrary and capricious.***

Federal regulations required the FNS to withdraw Plaintiff's authorization to participate in the SNAP once it determined that Plaintiff failed to satisfy either of the two eligibility requirements, Criterion A and Criterion B. 7 C.F.R. §§ 278.1(b)(1)(iv); 278.1(l)(1). The Agency's interpretation of its own regulations must be upheld even if such interpretation is not the only permissible one or even the most reasonable. *Grocery Town Market v. United States*, 848 F.2d 392, 396 (3d Cir. 1988).

***Plaintiff's prior compliance history is irrelevant to the instant matter.***

Between April and September 2014, the FNS investigated Plaintiff based on a series of suspicious transactions such as an unusual number of transactions ending the same-cents value, multiple transactions made from individual benefit accounts in unusually short time frames and excessively large purchases. Ultimately, the FNS withdrew its determination that trafficking occurred because it found the alternate explanations advanced by Plaintiff to be at least plausible. The FNS mistakenly classified Plaintiff as convenience store instead of a specialty market. This mistaken classification could have cause the Agency's software to flag transactions as suspicious

due to their dollar value which may not be suspicious for a store selling seafood, which can be expensive. Also, Plaintiff noted certain seasonal spikes in its sales in spring and summer months which may have also unduly triggered the agency's compliance and monitoring software. The FNS compared Plaintiff's 2014 and 2015 spring and summer sales data and found that such sales increases might explain the suspicious transactions. Accordingly, the agency withdrew its determination permanently disqualifying Plaintiff from participating in the SNAP. The prior compliance investigation has nothing to do with the instant matter. Rather, Mr. Brown's own admission that Plaintiff did not satisfy Criterion B as well as the supporting evidence he provided warranted the investigation and sanction that gave rise to this litigation.

***The Government has not discriminated against Plaintiff or its owners.***

In discovery, Plaintiff brought it to the agency's attention that there are two retailers in the vicinity of Plaintiff also selling garlic crabs (and, by implication, presumably such sales constitute at least 50 percent of those store's gross retail sales). One of these stores, Williams Seafood, is owned by an African-American and the other, Fishnet Seafood, is owned by a Caucasian. Plaintiff alleged that the FNS "unfairly targeted" Plaintiff by withdrawing the authorization of Williams Seafood, but not Fishnet Seafood. Plaintiff has alleged that it is owned by African-American(s).

The FNS does not collect or maintain information about the race or ethnicity of the owners of SNAP-participating retailers. As such, the agency was unaware of the race or ethnicity of the owners of Williams Seafood, Fishnet Seafood, Plaintiff or any other retailer. The Agency very much appreciates the Plaintiff alerting it of another store that may be ineligible for participation in the SNAP. FNS will investigate whether Fishnet Seafood remains eligible to participate in the SNAP and take appropriate action.

**CONCLUSION**

Plaintiff is a restaurant within the meaning of federal regulations concerning eligibility to participate in the SNAP. Plaintiff's receipts as well as information available in the Administrative Record and online confirm the Agency's determination. Plaintiff is free to avail itself of the opportunity to reapply for participation in the SNAP and offer explanations as to how its sales data do not render it a restaurant for the purposes of the SNAP. The Agency will review such information and, if the application is denied, provide a written rationale and opportunity for administrative review. The Court should dismiss the instant matter for lack of subject-matter jurisdiction or enter summary judgment in the Agency's favor.

Respectfully submitted,

SHERRI A. LYDON
UNITED STATES ATTORNEY

By: *s/Barbara M. Bowens*
Barbara M. Bowens (#4004)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Phone: (803) 929-3000
Email: Barbara.Bowens@usdoj.gov

August 30, 2018